UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HOWARD M. McCORD,

                                    Plaintiff,

            v.

RON HAYNES, *et al.*,

                                    Defendants.

Case No. C21-5512-JHC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Howard McCord, proceeding *pro se* and *in forma pauperis*, challenges in this action the Washington Department of Corrections' ("DOC") response to COVID-19 at the Stafford Creek Corrections Center ("SCCC"). (*See* Compl. (dkt. #5).) In particular, Plaintiff alleges that his Eighth Amendment rights were violated as a result of the actions and/or inactions of Defendants in relation to the DOC response to COVID-19. (*See id.* at 4-8.) Plaintiff identifies as Defendants in his complaint SCCC Superintendent Ron Haynes, SCCC Corrections Officer David Christensen, SCCC Chief Medical Officer Sara Kariko, and SCCC Facility Medical Director Ryan

REPORT AND RECOMMENDATION
PAGE - 1

1   Herrington.[1] (*Id.* at 2-4.) Plaintiff seeks declaratory and injunctive relief, damages, and costs. (*Id.*
2   at 8-11.)

3        This matter is before the Court on Defendants' motion for summary judgment. (Defs.'
4   Mot. (dkt. # 19).) Defendants submitted in support of their motion the declarations of Timothy
5   Feulner (Feulner Decl. (dkt. # 20)) and Scott Russell (Russell Decl. (dkt. # 21)). Plaintiff has
6   been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952
7   (9th Cir. 1998) (*see* dkt. # 22), and has had ample opportunity to file a response to Defendants'
8   motion, but has failed to do so.[2] Briefing is now closed with respect to Defendants' motion and
9   this matter is ripe for review.

10       The Court, having considered Plaintiff's complaint, Defendants' motion for summary
11  judgment, and the balance of the record, recommends that Defendants' motion be GRANTED,
12  and that Plaintiff's complaint and this action be DISMISSED with prejudice.

13                          **II.    BACKGROUND**

14  **A.    Factual Background**

15       On October 29, 2019, Plaintiff entered DOC custody after having been convicted of
16  unspecified charges in King County Superior Court. (Feulner Decl., Ex. 1 (dkt. # 20-1) at 8.)

17

18  [1] On August 27, 2021, Defendants' counsel filed a statement noting the death of Mr. Christensen. (Dkt.
    # 12.) Defendants' counsel advised that Mr. Christensen died before the filing of the instant matter, and
19  that he was unaware of the identity of Mr. Christensen's personal representative for his estate. (*Id.*) As
    such, Mr. Christensen remains unserved. However, nothing in the record indicates that analysis of
20  Plaintiff's claims against Mr. Christensen would depart from the reasoning set forth below. The Court
    therefore recommends that Mr. Christensen be dismissed with prejudice due to his passing.

21  [2] The Court notes that Defendants' motion for summary judgment, accompanying declarations, and notice
    to *pro se* inmate of dispositive motion were originally returned as undeliverable when electronically
22  mailed to Plaintiff due to his release from DOC custody. (*See* dkt. # 23.) However, the docket reflects that
    the above-mentioned documents, as well as this Court's February 23, 2022 Order, were all subsequently
23  sent to Plaintiff via U.S. mail and have not been returned as undeliverable.

REPORT AND RECOMMENDATION
PAGE - 2

Plaintiff has had multiple admissions into DOC custody since his first admission in May 1994, with the October 2019 admission being his most recent. (*See id.*, Ex. 1 at 6-22.) Plaintiff was initially sent to the Washington Corrections Center ("WCC") from King County, and on December 30, 2019, he was transferred to the SCCC. (*Id.*, Ex. 1 at 7-8.) The intake screening form completed upon Plaintiff's arrival at the WCC indicated a few medical concerns including that Plaintiff was missing the upper lobe of his right lung, apparently as the result of a prior gunshot wound to the chest. (*Id.*, Ex. 2 (dkt. # 20-1) at 26.) Another intake screening was completed when Plaintiff was transferred from the WCC to the SCCC. (*See id.*, Ex. 2 at 27.) The intake screening form completed at that time noted additional medical concerns including dental issues, an issue with Plaintiff's right ankle/Achilles, and a prior gunshot wound involving both of Plaintiff's hips. (*See id.*)

As noted above, Plaintiff's claims in this action relate to the DOC's response to COVID-19 at the SCCC. Specifically, Plaintiff alleges that he was "exposed to prisoners, as well [as] staff infected with COVID-19[.]" (Compl. at 2.) Plaintiff asserts that he has serious underlying health conditions which heighten his risk of infection and create an extraordinary risk that he will suffer serious illness, and/or death should he contract COVID-19. (*See id.* at 2-5.) Though not entirely clear, Plaintiff appears to further allege that his ongoing exposure to COVID-19 has heightened his risk of suffering injury to his lungs, vital organs, heart, and central nervous system. (*Id.* at 5.)

Beginning in February 2020, at the outset of the pandemic, DOC implemented several policies and procedures to address the risk of COVID-19 to its inmates and staff. (*See* Russell Decl. at ¶¶ 5-8.) Among these measures, DOC required screening and testing of all inmates and

REPORT AND RECOMMENDATION
PAGE - 3

1    staff, isolation and quarantine of affected individuals, medical care for individuals who tested

2    positive for COVID-19, preventative measures for high-risk inmates housed in certain units, and

3    use of personal protective equipment ("PPE") throughout its facilities. (*Id.* at ¶¶ 10, 15-21.)

4    DOC's COVID-19 protocol ("Guideline") remains in place and continues to be updated. (*Id.* at

5    ¶ 10; *see also id.*, Ex. 1 (dkt. # 21-1) at 2-45.)

6          Pursuant to these protocols, Plaintiff was tested for COVID-19 multiple times while at

7    the SCCC, including on December 30, 2020, January 6, 2021, January 13, 2021, January 19,

8    2021, January 26, 2021, February 2, 2021, May 11, 2021, May 17, 2021, July 7, 2021, July 14,

9    2021, and July 23, 2021, and on each occasion he tested negative. (Feulner Decl., Ex. 2 at 30-35,

10   37-41.) While at SCCC, Plaintiff also sought medical care for medical issues unrelated to

11   COVID-19, including on March 23, 2020, June 3, 2020, April 30, 2021, and May 17, 2021. (*Id.*

12   at 28-29, 36.)

13         On July 26, 2021, Plaintiff was temporarily transferred to the WCC. (Feulner Decl., Ex. 1

14   at 7.) He tested negative for COVID-19 on his intake at WCC and again on August 6, 2021. (*Id.*,

15   Ex. 2 at 43-44.) On August 9, 2021, Plaintiff was transferred to Monroe Correctional Complex

16   ("MCC"), where he tested negative for COVID-19 on intake. (*Id.*, Ex. 1 at 6-7, Ex. 2 at 46.)

17   Plaintiff was seen by medical staff on August 26 and October 21, 2021, for ongoing health

18   concerns unrelated to COVID-19. (*Id.*, Ex. 2 at 47-48.) Plaintiff also tested negative for COVID-

19   19 on January 7 and January 12, 2022. (*Id.* at 49-50.)

20         From January 8 to February 1, 2022, Plaintiff was regularly monitored by MCC medical

21   staff, who did not note any COVID-19 symptoms during their checks. (Feulner Decl., Ex. 2 at

22

23

REPORT AND RECOMMENDATION
PAGE - 4

53-58.) Plaintiff nonetheless tested positive for COVID-19 on January 19, 2022. (*Id*. at 51.) On February 1, 2022, Plaintiff tested negative for COVID-19. (*Id.* at 52.)

Plaintiff was released from DOC custody on February 8, 2022, after being resentenced. (Feulner Decl., Ex. 1 at 6; *Id*., Ex. 3 (dkt. # 20-1) at 69.)

### B.     Plaintiff's Claims

Plaintiff's first cause of action alleges a violation of his Eighth Amendment rights based on the conditions of his confinement at the SCCC relating to Defendants' handling of the COVID-19 pandemic and the SCCC's internal COVID-19 protocols. (*See* Compl. at 6-7.) Plaintiff alleges that he was unable to protect himself from COVID-19, and that the virus was allowed to spread at the SCCC due to Defendants' actions. (*Id.*)

Plaintiff's second cause of action alleges that Defendants instituted official policies and procedures at the SCCC that deprived him of timely medical care and treatment, timely COVID-19 testing, necessary PPE, and adequate segregated housing to mitigate COVID-19 exposures. (Compl. at 7-8.) Plaintiff further alleges under this cause of action that Defendants falsely reported to DOC that the SCCC followed COVID-19 avoidance procedures, and that they negated the administrative process to provide him emergency relief. (*Id.* at 8.) Plaintiff identifies this claim as one arising under 42 U.S.C. § 1983 (*id*. at 7), but he does not specifically identify the federal constitutional or statutory right at issue. It appears, however, that Plaintiff's second cause of action, like his first cause of action, implicates Eighth Amendment concerns.

### III.     DISCUSSION

Defendants move for summary judgment in this action on the basis that they are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims. (Defs.' Mot. at

REPORT AND RECOMMENDATION
PAGE - 5

6-10.) Specifically, Defendants argue that Plaintiff's claims fail as a matter of law because he has not shown, and cannot show, any deliberate indifference on the part of the individual Defendants to the risk of COVID-19. (Defs.' Mot. at 8.) Defendants also argue that Plaintiff's claims for injunctive relief are moot because he has been released from prison. (*Id*. at 10-11.) As further explained below, this Court concludes that Plaintiff has not established that Defendants violated his Eighth Amendment rights. The Court therefore need not address Defendants' qualified immunity argument[3], nor their argument that Plaintiff's claims for injunctive relief are moot.

## A.     Applicable Legal Standards

### 1.     Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102

---

[3] Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A qualified immunity analysis is unnecessary here because Plaintiff fails to demonstrate that Defendants' actions violated his constitutional rights.

REPORT AND RECOMMENDATION
PAGE - 6

1    (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of

2    material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The

3    Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

4            In supporting a factual position, a party must "cit[e] to particular parts of materials in the

5    record . . .; or show[] that the materials cited do not establish the absence or presence of a

6    genuine dispute, or that an adverse party cannot produce admissible evidence to support the

7    fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there

8    is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at

9    585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over

10   facts that might affect the outcome of the suit under the governing law will properly preclude the

11   entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

12   (emphasis in original). The central issue is "whether the evidence presents a sufficient

13   disagreement to require submission to a jury or whether it is so one-sided that one party must

14   prevail as a matter of law." *Id*. at 251-52.

15           The opposing party must present significant and probative evidence to support its claim

16   or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

17   "The mere existence of a scintilla of evidence in support of the non-moving party's position is

18   not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d

19   1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with

20   allegations in the complaint, or with unsupported conjecture or conclusory statements."

21   *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

22

23

REPORT AND RECOMMENDATION
PAGE - 7

2.     *Section 1983 Standard*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute; and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act he was legally required to do that caused the deprivation complained of. *Id.* (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

**B.     Analysis**

Plaintiff alleges in his complaint violations of his Eighth Amendment rights. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conditions of confinement that involve the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). A prisoner claiming an Eighth Amendment violation based on conditions of confinement "must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To establish an Eighth Amendment violation related to medical care, an inmate must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

REPORT AND RECOMMENDATION
PAGE - 8

medical needs." *Estelle*, 429 U.S. at 106. Prison officials may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citations and internal quotation marks omitted). However, a prison official may be held liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Defendants, in their summary judgment motion papers, have adequately demonstrated that they have addressed COVID-19 risks at SCCC and attempted to mitigate such risks. As noted above, DOC developed a Guideline plan to mitigate the spread of COVID-19 at its facilities, including the SCCC, which remains in place. (Russell Decl. at ¶¶ 5, 10; *see also id.*, Ex. 1 at 2-45.)  DOC's Guideline plan provides for extensive COVID-19 protocols, including screening, testing, monitoring, isolation and quarantine, medical care for COVID-19 positive individuals, provision of COVID-19 PPE, social distancing, and prison population reduction efforts. (*Id.* at ¶¶ 5, 10, 14-32.) In addition, DOC has now vaccinated the majority of DOC inmates, and all DOC staff in positions requiring in-person interaction with inmates have also been fully vaccinated.[4] (*Id.* at ¶¶ 35-42.)

Though DOC did not eliminate all risk of contracting COVID-19, Plaintiff's allegations fail to establish that Defendants knew of, and otherwise disregarded, an excessive risk to his health or safety based on their COVID-19 response in regard to his conditions of confinement. *See Fraihat v. U.S. Immigr. & Customs Enforcement*, 16 F.4th 613, 636-38 (9th Cir. 2021)

---

[4] Per Defendants' submitted declarations, as of February 8, 2022, 10,273 incarcerated individuals had received at least one dose of the COVID-19 vaccine. (Russel Decl. at ¶ 40.)

REPORT AND RECOMMENDATION
PAGE - 9

(finding detainees failed to demonstrate ICE acted with deliberate indifference where ICE complied with CDC interim guidance for its detention facilities, enacted system for reporting suspected or confirmed COVID-19 cases on expedited timeframe, and enabled discretionary release of at-risk detainees); *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3rd Cir. 2020) ("Nor does a failure to eliminate all [COVID-19] risk establish that the Government was deliberately indifferent to [plaintiffs'] serious medical needs."); *see also Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (finding prison officials took adequate actions to mitigate risk of COVID-19 and that such actions demonstrated a lack of deliberate indifference); *Swain v. Junior*, 961 F.3d 1276, 1287-1289 (11th Cir. 2020) (same).

Furthermore, in relation to Plaintiff's second cause of action, it is clear from the record that Defendants were not deliberately indifferent to his medical needs nor was he denied adequate medical treatment. As previously documented, Plaintiff was tested for COVID-19 on eleven different occasions by SCCC medical staff. (*See* Feulner Decl., Ex. 2 at 30-35, 37-41.) He was seen by SCCC medical staff on multiple occasions regarding health concerns unrelated to COVID-19. (*Id.* at 28-29, 36.) Looking beyond the allegations of Plaintiff's complaint, the record further indicates that he continued to receive adequate medical care at MCC, the facility where Plaintiff ultimately contracted COVID-19. Plaintiff was tested for COVID-19 multiple times prior to his positive test (*id.* at 46, 49-50), and again received care for ongoing health concerns unrelated to COVID-19 (*id.* at 47-48). Even after his positive COVID-19 test, Plaintiff's symptoms were regularly evaluated and he was again tested for COVID-19, which ultimately yielded a negative result. (*Id.* at 51, 56-58.)

REPORT AND RECOMMENDATION
PAGE - 10

In sum, Defendants have submitted ample evidence demonstrating that they were not deliberately indifferent to Plaintiff's safety or medical needs in relation to COVID-19. Plaintiff has offered no evidence of his own to rebut that submitted by Defendants. Accordingly, this Court concludes that Defendants are entitled to judgment as a matter of law.

## IV.    CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment (dkt. # 19) be granted, and that Plaintiff's complaint (dkt. # 5) and this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 17, 2022**.

DATED this 24th day of May, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 11